UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
CRIMINAL DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

vs.

        CASE NO. 12-CR-20272

        **HON. DENISE PAGE HOOD**

**ABDUL MALIK AL-JUMAIL,**

        Defendant.
_____

**DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE,
OR IN THE ALTERNATIVE, HOME CONFINEMENT**

Defendant, Abdul Malik Al-Jumail, files this emergency motion to re-sentence him to a sentence of imprisonment of time-served or, alternatively, to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(I), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

On May 22, 2015, the Court sentenced Mr. Al-Jumail to 120 months in prison after a jury convicted him of Conspiracy to Commit Health Care Fraud. (R at 450). The Bureau of Prisons indicates a March 19, 2024 release date, indicating that Mr. Al-Jumail has severed more than half of his sentence. He is currently incarcerated at the low-security, Fort Dix Federal Correctional Institution. At 60 years old and a history of history of coronary arterial disease, diabetes, and retinal disease, he is on multiple prescripts for these conditions. As a result he could suffer death or serious injury if infected by the COVID-19 virus or in the alternative the care for his underlying conditions could suffer from prison systems being overloading by COVID-19 infections.

As the Court is aware, Mr. Al-Jumail has two other pending motions before this

Court, a Motion to Vacate his Sentence pursuant to 28 U.S.C. 2255. (R at 597), and an Emergency Motion for Bond Pending the Court's Decision on his 28 U.S.C. § 2255 Motion. (R at 678)  The global health crisis posed by COVID-19 throughout this nation, and specifically in our federal prisons necessitates filing this motion for immediate consideration and, if necessary, hearing by the Court.

    Extraordinary events that could not have been foreseen at the time of sentencing have made his current state of confinement at FCI Fort Dix extremely dangerous for Mr. Al-Jumail. In recent months, COVID-19 has spread across the globe and throughout the United States. As of March 30, 2020, COVID-19 has sickened over 815,100 people, leading to at least 40,237 deaths worldwide.  On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.  President Trump has declared a national emergency. See https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (last visited Mar. 31, 2020). Coronavirus Map: Tracking the Global Outbreak, N.Y. TIMES (updated daily),Press Release, World Health Organization, WHO Director-General's opening remarks at the media briefing on COVD-19 – 11 March 2020, (March 11, 2020), available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media- briefing-on-covid-19---11-march-2020.

    There remains much to be learned about the Covid 19 virus; however it is clear that older inmates, especially those with underlying conditions and immune deficiencies are particularly susceptible to the virus.  At 60 years old and a combination of serious health ailments, Mr. Al-Jumail falls squarely in the group of inmates who are susceptible to a Corona virus infection that could severely injure, or kill him.

Although the official position of the Bureau of Prisons is that it is maintaining a healthy, safe environment that is compliant to its own regulations and the social distancing requirements for stopping the spread of COVID 19, media investigations indicate that is not true. An April 16, 2020 video out of the Fort Dix FCI shows it is impossible for inmates like Mr. Al-Jumail to practice social distancing. See https://www.forbes.com/sites/walterpavlo/2020/04/19/will-cell-phones-be-the-downfall-of-prisons/#35c88f2b1be4 Other reports indicate that BOP personnel are willfully ignoring safety procedures in ways that can cause mass infection in a facility's population. https://theintercept.com/2020/04/10/prison-coronavirus-mdc-bop/

1. **Jurisdictional Requirements**

Mr. Al-Jumail requests extraordinary relief because it is safer for him to be incarcerated at home than in a BOP facility. More than thirty days have passed since Mr. Al-Jumail has advocated for himself at FCI Fort Dix by asking for compassionate release, or in the alternative, home confinement. He has received no response. Even if the Court believes there remains a 30 day notice requirement to the BOP, case law indicates that the possibility of death or serious injury to Mr. Al-Jumail's justifies waiver of the jurisdictional requirement.

In *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), the Second Circuit instructed that "(e)ven where exhaustion is seemingly mandated by statute . . . the requirement is not absolute." These exceptions include waiver of exhaustion "where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue" and "where pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118; see also *United*

States v. McCarthy, 2020 WL 1698732, at *4 (D.Conn April 8, 2020); United States v. Colvin, 2020 WL 1613943, at *2 (D.Conn April 2, 2020); United States v Powell, No. 94-CR-316-ESH (ECF at 98)(D.D.C,, March 28, 2020); United States v. Zukerman, 2020 WL 1658880, at *3-4 (S.D.N.Y., April 3, 2020); United States v. Perez, 2020 WL 1546422, at *2 (S.D.N.Y., April 1, 2020). Observing a jurisdictional requirement would cause undue prejudice that threaten's Mr. Al-Jumail's life. Video evidence indicates that the staff at FCI Fort Dix is unwilling or unable to implement safe conditions that will stop the spread of COVID-19. Time is not on Mr. Al-Jumail's side. Further delay is further exposure and an increased possibility of severe illness and/or death. The request for compassionate release, or in the alternative, home confinement is justified and in accordance with18 U.S.C. § 3582(c)(1)(A)(I).

**2.      Extraordinary and Compelling Reasons for Release**

In order to determine if extraordinary and compelling reasons exist to release Mr. Al-Jumail, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
   (A) Medical Condition of the Defendant.--
       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophiclateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
       (ii) The defendant is--
           (I) suffering from a serious physical or medical condition,
           (II) suffering from a serious functional or cognitive

        impairment, or
- (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover

 (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasonsdescribed in subdivisions (A) through (C). U.S.S.G. 1B1.13

Mr. Al-Jumail presents "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. See, e.g., Danielle Ivory, "We Are Not a Hospital": A Prison Braces for the Coronavirus, N.Y. TIMES (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); See, e.g., Courtney BublŽ, Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says, GOVERNMENT EXECUTIVE (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminentdanger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines). To date, at least 42 inmates at FCI Butner have tested positive for COVID-19—the most of any federal prison. COVID-19 Cases, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 9, 2020).

Furthermore, there is overwhelm precedent for granting compassionate release under the current circumstances. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable. 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release granted."); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide selfcare within the environment of the RCC."); United States v. Muniz, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2 ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

Mr. Al-Jumail squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. The Center for Disease Control ("CDC") states that individuals who are 60 and older have a higher risk of severe illness. Groups at Higher

Risk for Severe Illness, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-athigher-risk.html (last visited Apr. 7, 2020). Mr. Al-Jumail is 60 years old. The CDC also states that individuals with underlying medical conditions, such as a diabetes, a serious heart condition, and liver disease, have a higher risk of severe illness. Id.  Mr. Al-Jumail suffers from two of these. Continuing Mr. Al-Jumail's incarceration under the current circumstances could be lethal.

**3.   History of the Defendant**

Mr. Al-Jumail is a non-violent, low security offender whose crime is involves medical fraud.  With proper conditions of release, Mr. Al-Jumail poses little risk to the community.  The Court should also note that Mr. Al-Jumail  has served his time productively.  He has not incurred any serious offenses while incarcerated and has availed himself of prison programs.  See *Pepper v. United States,* 562 U.S. 476 (2011)(evidence of post-sentencing rehabilitation may be highly relevant to several of the statutory sentencing factors that Congress has expressly instructed district courts to consider at sentencing). Finally, he has a re-entry plan that will prevent recidivism and ensure his health and safety as well as the public's health and safety should the Court reduce his sentence. His family can pick him up from the Fort Dix facility within a day of this Court granting the motion and ordering his release from prison. He can reside with his daughter, who's home is already approved by the Court's probation department, and be supervised by the Court's probation department under supervised release, or if the Court chooses, home confinement.  Mr. Al-Jumail will self-quarantine at home as long as necessary to ensure his health and safety and that of others.  Further, he will obtain

suitable, gainful employment if his health allows, and can obtain insurance through medicare. In sum, the § 3553(a) factors weigh heavily in Mr. Al-Jumail's favor.

This Court is in the business of weighing equities to make consequential decisions. Yet, other than habeas corpus proceedings in death penalty cases, few prior cases could have presented the potential, if not likely, life-or-death consequences that this case presents. The Court should grant this motion because so rarely do justice and mercy require the same result. See *Walker v. Martel*, 709 F.3d 925, 950-51 (9th Cir. 2013) (Gould, J., concurring in part & dissenting in part) ("Shakespeare told us that '[t]he quality of mercy is not strain'd,' Milton instructed us to "temper so [j]ustice with mercy" and advised us that '[m]ercy [must] colleague with justice,' and President Lincoln reminded us that 'mercy bears richer fruits than strict justice.'") (citations omitted); The Torah, Micah 6:8 ("what does the Lord require of you but to do justice, and to love kindness, and to walk humbly with your God."). The facts and the law are extraordinary and compelling. They call for mercy. Without mercy, Mr. Al-Jumail could be facing death behind bars.

WHEREFORE, Defendant, Abdul Malik Al-Jumail, respectfully requests that the Court grant his Motion for Compassionate Release, or in the alternative, Home Confinement.

Respectfully Submitted,

/s/ Nicole L. Smith
Nicole L. Smith, P 62475
Attorney for Abdul Malik Al-Jumail
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
nlsmith@smithmihas.com

CERTIFICATE OF SERVICE

I certify under penalty of perjury that I served the Defendant's Emergency Motion for Compassionate Release, or in the alternative, Home Confinement to all relevant parties and the Court through the Court's CM/ECF electronic filing system on April 23, 2020.

/s/ Nicole L. Smith
Nicole L. Smith, P 62475
Attorney for Abdul Malik Al-Jumail
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
nlsmith@smithmihas.com