UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                  Case No. 12-20272
                                                  HON. DENISE PAGE HOOD

v.

ABDUL MALIK AL-JUMAIL,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR IMMEDIATE REDUCTION OF
SENTENCE (COMPASSIONATE RELEASE) [#682]**

**I.    INTRODUCTION**

Defendant Abdul Malik Al-Jumail has filed an Emergency Motion for Compassionate Release or alternatively, home confinement [ECF No. 682], pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(I). Defendant asks the Court to modify his term of imprisonment (120 months) to time served or impose a special condition that he serve a period of home confinement on supervised release. Defendant's scheduled release date is March 19, 2024, indicating that he has served more than half of his term. [ECF No. 682, Pg.ID 10528]

**II.    BACKGROUND**

On September 30, 2014, a jury convicted Defendant of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349 (Count I) and Conspiracy to Pay and Receive Health Care Kickbacks, in violation of 18 U.S.C. § 371 (Count II). [ECF No. 377] Defendant's crimes are considered non-violent.

Defendant was sentenced on April 21, 2015, to serve 120 months for Count I and 36 months for Count II. [ECF No. 450] The sentences are running concurrently.

Defendant maintained a fraudulent healthcare company. Through this company, Defendant and his co-conspirators implemented a massive scheme, which created various "dummy" companies with falsified ownership papers. [ECF No. 685, Pg.ID 10541] Defendant used these false companies to hide that the companies had no patients, and each had a common owner. Defendant then paid kickbacks or bribes to receive real patient information from other sources. [*Id.*] After Defendant learned about the Government's investigation, he and his daughter destroyed various records documenting their crimes. [*Id.*]

Defendant is 60 years old, and he is housed at the Bureau of Prison's ("BOP") FCI Fort Dix facility in New Jersey. Defendant has served more than half of his custodial sentence. Defendant suffers from serious underlying and pre-existing medical conditions, including, but not limited to, coronary arterial disease, diabetes, and retinal disease. Prior to incarceration, Pretrial Services noted that Defendant has had two heart stint procedures and suffers from high blood pressure and high cholesterol. Defendant contends that this combination of conditions places him in the COVID-19 highest risk category.

On April 2, 2020, Defendant made a request to the warden at FCI Fort Dix for immediate release. [ECF No. 685-2, Pg.ID 10561] In his request, Defendant argued that his medical conditions place him in a high-risk category. Defendant also asserted that because several staff members live in New Jersey, a state with one of the highest rates of infections, the prison is no longer safe for inmates such as himself. [*Id.*]

On April 27, 2020, the warden's executive assistant responded to Defendant with a request for additional information. [*Id.* at 10560] Pursuant to Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. § 3582(c)(1)(A), the Prison instructed Defendant to specify why his situation satisfies the criteria for compassionate release. [*Id.*]

### III. LEGAL ANALYSIS

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) therefore requires that a defendant must satisfy both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.

#### A. Exhaustion

The Government asserts that Defendant does not qualify for compassionate release because he has not exhausted his efforts for compassionate release from the BOP, as required under 18 U.S.C. § 3582(c)(1)(A). The Government argues that Defendant "must at least ask the Bureau of Prisons[]" to fulfill his request and "give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020) (opinion amended on Apr. 8, 2020). The Government states that, for that reason, the Court does not have jurisdiction to address Defendant's COVID-19 argument. The Court acknowledges that a number of courts have denied applications for sentence modification under 18 U.S.C. § 3582(c)(1)(A) brought on

3

the basis of the risk posed by COVID-19, citing the fact that the defendant failed to exhaust administrative remedies. *See, e.g.*, *United States v. Alam*, Case No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)) (denying a motion for compassionate release due to the COVID-19 outbreak for failure to exhaust) (also citing many cases from across the country holding the same).

Citing the Second Circuit's opinion in *Washington v. Barr*, Defendant counters that "[e]ven where exhaustion is seemingly mandated by statute . . . the requirement is not absolute." 925 F.3d 109, 118 (2d Cir. 2019). Defendant further argues that the exhaustion requirement may be waived "where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." *Id.* Defendant also asserts that proceeding with the exhaustion requirement would result in "undue prejudice." *Id.* Citing various other courts, Defendant notes that various other courts have agreed. *See also United States v. McCarthy*, 2020 WL 1698732, at *4 (D. Conn April 8, 2020); *United States v. Colvin*, 2020 WL 1613943, at *2 (D. Conn April 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, No. 94- CR-316-

4

ESH (ECF at 98)(D.D.C,, March 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile"); *United States v. Zukerman*, 2020 WL 1658880, at *3-4 (S.D.N.Y., April 3, 2020); *United States v. Perez*, 2020 WL 1546422, at *2 (S.D.N.Y., April 1, 2020).

Arguing that social distancing at FCI Fort Dix is impossible, Defendant asserts that time is of the essence and observing administrative procedures would result in physical danger and undue prejudice. *See* Walter Pavlo, *Will Cell Phones be the Downfall of Prisons*, Forbes (Apr. 19, 2020, 12:11 PM), https://www.forbes.com/sites/walterpavlo/2020/04/19/will-cell-phones-be-the-downfall-of-prisons/#32c37f621be4 (describing the close living quarters present at FCI Fort Dix).

For the reasons that follow, the Court holds that, due to the unique and unforeseen threat posed by the COVID-19 pandemic to this Defendant because of his specific health conditions, the exhaustion of administrative process can be waived.

> The Court notes the following language from *Zukerman*:
>
> Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal

quotation marks and alterations omitted)). However, as this Court and others have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); *see United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)).[] There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

All three of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*,

6

> 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even ... death"); *see also Perez*, 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19). Here, even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.
>
> To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In Zukerman's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

*Zukerman*, 2020 WL 1659880, at **2–3 (footnotes omitted).

7

The Court finds that there are several factors that weigh in favor of Defendant's release from FCI Fort Dix. Defendant is 60 years old and, most significantly, suffers from coronary arterial disease, diabetes, and retinal disease. Pursuant to the COVID-19 pandemic, it appears to the Court that Defendant's age and conditions place him in the "highest risk category for complications and death from the disease if infected." *See, e.g.*, *Zukerman*, 2020 WL 1659880, at *4; *Basank v. Decker*, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality.") (citation omitted).

Even if the Court were to accept the argument that the BOP and FCI Fort Dix are taking precautions to ensure the safety of prisoners, Defendant's risk of contracting COVID-19 is not speculative. There have been numerous cases of COVID-19 at FCI Fort Dix, both among prisoners and staff. As of May 6, 2020, FCI Fort Dix had forty confirmed prisoner cases of COVID-19 and three staff member confirmed cases. *See* COVID-19, Federal Bureau of Prison, https://www.bop.gov/coronavirus/index.jsp.

The Court is cognizant that most of Defendant's health conditions existed prior to sentencing, something that Pretrial Services referenced in its pretrial report. The Court is also cognizant that Defendant is not scheduled to be released

8

for four years, but it cannot ignore that the threat of COVID-19 exists now. As set forth above, Defendant (a) has serious known underlying illnesses — and has had two heart stints; (b) is detained in a facility where positive cases of the virus have been found; and (c) like other inmates, Defendant is unable to take adequate measures to protect himself.

The Court holds that Defendant's age, serious health conditions, and high risk of contracting COVID-19 at FCI Fort Dix justify the waiver of the exhaustion requirement.

### B. Extraordinary and Compelling Reason

Defendant claims that his "extraordinary and compelling reasons" meet the necessary standard required to warrant release. Defendant argues that through a combination of his medical condition and "other reasons" he meets the criteria for compassionate release.

Defendant indicates that he is a non-violent offender who was convicted of health care fraud. He asserts that with proper conditions, he poses little risk to the community. Defendant also indicates that he has not committed any serious offenses while incarcerated and has taken advantage of beneficial prison programs. Citing *Pepper v. United States*, Al-Jumail argues that evidence of post-sentencing rehabilitation may sometimes support a downward departure during a resentencing. 562 U.S. 476 (2011). Because *Pepper* involved a resentencing that resulted from

reversal and remand, and the instant case involves a petition for compassionate release, it is not completely analogous. However, the Court finds *Pepper's* use of positive post-sentencing evidence instructive.

The Government argues that the Sentencing Commission—not the Judiciary—defines "what should be considered extraordinary and compelling reasons for sentence reduction." Under this interpretation the Government contends that district courts' "sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014).

Citing the Sentencing Commission's policy statement USSG § 1B1.13, the Government argues that the criteria for home confinement is unambiguous and that Defendant does not qualify. The Commission's policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons." USSG § 1B1.13 cmt. n.1. Unless an inmate's circumstances fall within those categories, he is not eligible for compassionate release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Saldana*, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020). The Government argues that the "other category" includes criteria such as an inmate's disciplinary record, unresolved detainers, and the nature of a defendant's offense. Using this criterion, the Government asserts that Defendant was disciplined twice

10

for "possessing a hazardous tool." [ECF No. 685, Pg.ID 10548] The Government also indicates that Immigration and Customs Enforcement ("ICE") initiated a detainer for Defendant in 2015. [*Id.*] Concerning the nature of the offense, the Government argues that Defendant's underlying crime "weaken[ed] the entire nation's healthcare system." [*Id.*] The Court acknowledges the Government's arguments and the severity of Defendant's crime, but ultimately finds that the COVID-19 pandemic as applied to this individual Defendant presents compelling and extraordinary reasons for home confinement.

The Government also argues that Defendant's crime severely weakened the healthcare system and Defendant's deception poses a danger to the healthcare industry. The Government also claims that Defendant's only proposed living arrangement would place him in the same residence as his daughter who was convicted for the Destruction of Records in a Federal Investigation and helped facilitate Defendant's illicit scheme.

The Court finds that Defendant's crime was egregious, but it was ultimately nonviolent. The Court also agrees that proper safeguards would ensure that Defendant continues to serve his term to completion and comply with Court guidelines. As Defendant notes, his daughter has complied with her conditions of supervised release. Defendant also notes that other individuals, such as his wife,

would also reside in the home. This arrangement existed, and was noted by Pretrial Services, prior to Defendant's trial and sentencing.

The Government uses *Saldana* to argue that the Court does not have authority to determine whether Defendant fits the criteria for "other reasons." However, the Government fails to also include *Saldana's* language explaining that the BOP's list for "other reasons" is nonexclusive. *Saldana*, 2020 WL 1486892, at *2; *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) (holding that BOP program statements are entitled to "some deference" when they reflect a "permissible construction of the statute") (quotations omitted)). Given that Defendant also asks for relief under the "medical condition" category, the Court is not convinced that the Court is barred from determining Defendant's eligibility under the "compelling and extraordinary" reasons standard.

Although the sentence imposed on Defendant was just, the Court holds that the threat posed by COVID-19, in light of Defendant's age and his underlying health conditions, constitutes an "extraordinary and compelling reason" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I). As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however, is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a

global pandemic." *Zukerman*, 2020 WL 1659880, at *6 (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

The United States Sentencing Commission has defined "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

In this case, Defendant's age, together with his chronic arterial disease and diabetes, meet that requirement. As the World Health Organization has determined, the populations most at risk of suffering severe health risks from COVID-19 are "older people, and those with underlying medical problems like cardiovascular disease [and] cancer." Coronavirus, World Health Organization (Apr. 27, 2020), https://www.who.int/health-topics/ coronavirus#tab=tab_1. According to the United States Center for Disease Control, persons over the age of 65 and individuals of any age who have serious underlying medical conditions, including serious heart conditions and diabetes, are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease

13

Control and Prevention (April 27, 2020), https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Defendant is among those persons most at risk. Data released by the CDC indicates that the death rate for COVID-19 increases with age with the highest death rate among individuals older than 65. The CDC noted that underlying health conditions also contribute to COVID-19 health complications. Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention (Mar. 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. As an inmate at FCI Fort Dix, Defendant has already been exposed to COVID-19.

This Court and others have held that compassionate release is justified under such conditions. *United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (recommending that the BOP release 64 year old defendant with diabetes and hypertension to home confinement); *Perez*, 2020 WL 1546422, at *4 (the defendant was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two vicious beatings while he was incarcerated); *Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying . . . immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if

14

she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 . . . includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving

compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

For the reasons stated above, the Court finds that Defendant has demonstrated that extraordinary and compelling reasons justify a modification of his term of imprisonment.

### C. Other Considerations

The Government also argues that only the BOP has the authority to release an inmate into home confinement. *See United States v. Garza*, 2020 WL 1485782 (S.D. Cal. Mar. 27, 2020) (recognizing that "the Court lacks authority to designate home confinement"); *United States v. Brown*, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) ("It is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)."); *see also United States v. Patino*, No. 18- 20451, 2020 WL 1676766, at *6 (E.D. Mich. Apr. 6, 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the Bureau of Prisons.").

The Court disagrees with the Government's interpretation and finds that the Court has the authority to modify sentences in appropriate circumstances, pursuant

to 18 U.S.C. 3582(c)(1)(A) (emphasis added); *see also United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020).

The BOP recently was allowed to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. Law 116-136, 134 Stat 281, 516 (Mar. 27, 2020). The Attorney General has issued two directives to the BOP ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; 04-03-2020 Directive to BOP, at 1). The statutory authorities include the requirements in 18 U.S.C. § 3624(c) and (g) for home confinement in general, as well as the requirements in 34 U.S.C. § 60541(g) for some elderly and terminally ill offenders.

The directives also require the Bureau of Prisons to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

The Government also argues that defendants with ICE detainers are categorically ineligible for sentence reduction programs. *See McLean v. Crabtree*,

173 F.3d 1176, 1180 (9th Cir. 1999) (discussing specific BOP programs that exclude prisoners who have ICE detainers). The Court agrees that, under normal BOP guidelines, defendants with ICE detainers are ineligible for sentence reduction programs. However, as noted above, new Department of Justice directives instruct the BOP to consider "all at-risk inmates—not only those who were previously eligible for transfer" into home confinement. (04-03-2020 Directive to BOP, at 2).

The Government further argues that ruling in favor of Defendant is just symbolic because ICE will immediately remove him from the country. It may be that ICE will act on its Detainer against Defendant. However, the matter before this Court is whether Defendant is entitled for a reduction of sentence based on compassionate release.[1]

For the reasons stated above, the Court grants Defendant's Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court reduces Defendant's term of imprisonment portion of his sentence to time served, and the Court imposes a term of supervised release equal to the unserved portion of his original term of imprisonment (as calculated by the BOP). Unless Defendant has been in a segregated special unit for

---

[1] The issue of whether ICE may act on the Detainer is not before the Court. *See United States v. Veloz-Alonzo*, 910 F.3d 266, 270 (6th Cir. 2018).

high-risk prisoners for more than 14 days where no inmate has tested positive or showed symptoms of COVID-19 within the past 14 days, the Court orders Defendant to self-quarantine within his home when he begins home confinement. Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

**I.     CONCLUSION**

Accordingly,

IT IS ORDERED that Defendant's Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) [ECF No. 682] is GRANTED.

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that the BOP shall release Defendant immediately, without holding for a 14-day quarantine period at FCI Fort Dix, and Defendant shall remain self-quarantined for 14 days after release.

IT IS FURTHER ORDERED that, upon release, Defendant shall commence a new term of supervised release that is equal to the unserved portion of his original term of imprisonment (as calculated by the BOP).

IT IS FURTHER ORDERED that Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Probation Department to schedule an appointment.

IT IS FURTHER ORDERED that Defendant's original term of supervised release is canceled.

IT IS ORDERED.

Dated: May 12, 2020        s/Denise Page Hood
                           Chief Judge, United States District